HERGET, Judge.
Plaintiffs Billy Mack Bishop and his automobile collision insurer, Hartford Fire Insurance Company, instituted this suit against Henry L. Panke and the public liability automobile insurer of Panke’s car, State Farm Mutual Automobile Insurance Company, for damages allegedly sustained by them, namely, for personal injuries to Mr. Bishop and property damages to the insured automobile, arising out of a collision between the two vehicles being operated by plaintiff Bishop and defendant Panke. From a judgment in favor of Defendants, rejecting the demands of Plaintiffs and dismissing their suit, Plaintiffs appealed.
The situs of the accident is in the 7300 block of Florida Street, a four-lane highway traversing an easterly-westerly direction in Baton Rouge with dual opposing lanes separated by a neutral ground insufficient in width to accommodate an automobile of the average length crosswise the neutral ground. The evidence reveals that a vehicle stopped in the neutral ground breaks for passage between the directional traffic lanes will protrude three or four feet into one or the other of the inside opposing traffic lanes. Florida Street is one of the most heavily traveled arteries of commerce within the City of Baton Rouge. Its limits extend westerly into the city from a traffic circle joining Airline Highway, a National generally northerly-southerly route, and the Hammond Highway which extends in an easterly direction.
*86 Mr. Bishop is an employee of Boyce Machinery Company which has offices on the south side of Florida Street. Mr. Bishop testified he left the office at approximately 5:25 p. m. on December 22, 1960 with the intention of crossing- Florida Street for the purpose of cashing a check at a bank located on the north side of Florida Street opposite the offices of Boyce Machinery Company. The evidence reflects there is a driveway leading southerly from Florida Street into the Boyce Machinery Company’s property directly opposite an opening in the neutral ground of Florida Street. Traffic at all times on Florida Street at the time of day when Mr. Bishop entered therein is extremely heavy. According to his testimony upon his determining he could negotiate the crossing without impeding traffic he proceeded across the eastbound traffic lanes of Florida but upon arriving at the neutral ground he was unable to proceed on across the westbound traffic lanes because of oncoming traffic. Accordingly, he brought his car to a stop in the neutral ground with some three to four feet of the rear of his car protruding into the inside lane for easterly traffic and while in this position his car was struck on the left rear fender by the oncoming Pan-ke vehicle causing the damages for which recovery is sought.
The speed limit on Florida Street at the point this accident occurred is SO miles per hour.
Mr. Panke, traveling in an easterly direction, testified he had been maintaining a speed of some 40 miles per hour but a short time before the impact occurred he had reduced the speed of his vehicle to about 35 miles per hour. He said there was a vehicle preceding him at a distance of approximately one hundred feet; that the first knowledge he had of the presence of Mr. Bishop was when he saw the headlights of Bishop’s vehicle, facing in a northerly direction, when it came into his view after a motorist in the outside eastbound lane had proceeded farther to the east beyond the locale of the site of the accident clearing the obscuration of Bishop’s vehicle. At the time of his observation of Mr. Bishop’s vehicle, Mr. Panke was some 60-65 feet west of the point of impact. He said he immediately applied the brakes, veered his vehicle to the right slightly but was unable to enter the outside lane for easterly traffic to the south of him because of the presence of other motorists proceeding thereon but despite this slightly veering southerly to his right he was unable to avoid striking the Bishop car. Mr. Panke’s version of the accident is supported by the testimony of his wife, a passenger in his automobile, and further corroborated by the testimony of the police officers who investigated the accident as to the physical findings such as debris in the road and skidmarks.
The Trial Court was of the opinion Mr. Bishop negligently attempted to make a crossing of this busy thoroughfare when, because of the heavy traffic, such maneuver could not be made safely and it was of the opinion by such act the ensuing collision was the result of Mr. Bishop’s failure to accord to vehicles on Florida Street the right of way. Perhaps his precipitous action was motivated by his desire to reach the bank on time and he had only approximately five minutes, inasmuch as the bank closed at 5 :30 p. m., for this accomplishment.
We are of the opinion Mr. Bishop was guilty of contributory negligence barring his right to recover. The doctrine of last clear chance is inapplicable as Mr. Panke did not discover, nor was he in a position wherein we can say he should have observed, the perilous position in which Mr. Bishop had placed himself at a time when, by the exercise of reasonable care, Mr. Panke could have avoided the collision.
In Fontenot v. Liberty Mutual Insurance Company, La.App., 130 So.2d 462, the Court of Appeal, Third Circuit observed:
■ “The jurisprudence of this State has been established to the effect that the prior entry of an intersection, without *87 a reasonable expectation and opportunity of traversing it in safety and without obstructing the normal movement of traffic therein, does not constitute a pre-emption of the intersection. Also, before a motorist can successfully rely on pre-emption, he must show that he •entered the intersection at a proper speed and sufficiently in advance of the car on the intersecting street to permit 'him to proceed on his way without requiring an emergency stop by the other vehicle. Montalbano v. Hall, La.App. 2 Cir., 108 So.2d 16; Evans v. Walker, La.App. 2 Cir., 111 So.2d 885; Levy v. St. Paul-Mercury Indemnity Co., La. App. 4 Cir., 124 So.2d 143; Dennison v. Southwestern Fire & Casualty Co., La. App. 1 Cir., 124 So.2d 421; Lavigne v. Southern Farm Bureau Casualty Ins. Co., La.App. 3 Cir., 125 So.2d 430; Saloom v. Guidry, La.App. 3 Cir., 125 So.2d 434; Roeling v. Fidelity-Phenix Fire Ins. Co. of N. Y., La.App. 4 Cir., 125 So.2d 661; Hernandez v. State Farm Mutual Automobile Ins. Co., La. App. 3 Cir., 128 So.2d 833; McCoy v. State Farm Mutual Ins. Co., La.App. 3 Cir., 129 So.2d 66.”
Inasmuch as the doctrine of last clear ■chance is inapplicable, having concluded the plaintiff, Billy Mack Bishop, was guilty of contributory negligence, it becomes unnecessary to determine whether the defendant, Henry L. Panke, was guilty of primary negligence. This determination is aptly expressed by the Court of Appeal, Fourth Circuit, in the case of Collins v. Williams, La. App., 143 So.2d 103, as follows:
“We have observed heretofore that when a suit instituted by the plaintiff is predicated upon an allegation of negligence and the defense thereto is a denial of negligence joined with an alternative plea of contributory negligence, it is often expedient in authoring an opinion to initially consider the plea of contributory negligence, for if the facts disclose the existence of contributory negligence without which the accident would not have occurred, it is then unnecessary to determine whether the defendant was guilty of primary negligence.”
Judgment affirmed.